# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WILLIE TRIPLETT (#100388)**                                    **CIVIL ACTION**

**VERSUS**

**JAMES LEBLANC, ET AL.**                                    **NO. 21-717-SDD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on December 14, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**WILLIE TRIPLETT (#100388)**                                    **CIVIL ACTION**

**VERSUS**

**JAMES LEBLANC, ET AL.**                                    **NO. 21-717-SDD-RLB**

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION</u>

This matter comes before the Court on the defendants' Motion to Dismiss (R. Doc. 46). The Motion is opposed. *See* R. Doc. 48.

The *pro se* Plaintiff, an inmate incarcerated at Louisiana State Penitentiary ("LSP"), filed this proceeding pursuant to 42 U.S.C. § 1983 against James LeBlanc, Jacob Johnson, Randy Lavespere, and John Doe complaining that his constitutional rights were violated due to deliberate indifference to his serious medical needs. He seeks monetary and injunctive relief.

Defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of Plaintiff's claims against them in their official capacities. Section 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo,* 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, to the extent the plaintiff may be asserting claims against

defendants in their official capacities for monetary damages, any such claims are subject to dismissal.

Turning to Plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, Defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that Plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers.' " *Id*. (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

### Plaintiff's Allegations

In his Complaint, as amended, Plaintiff alleges the following: Plaintiff has been incarcerated for over 28 years and has had numerous blood tests performed at LSP. In February of 2021, the plaintiff was scheduled for cataract surgery, but the surgery was cancelled because syphilis was discovered in his blood. At no time prior to this was the plaintiff informed that he was suffering from syphilis. The plaintiff's surgery had to be postponed several times due to the failure of defendant Doe to provide treatment for the infection.

Defendant Johnson oversees, instructs, and implements health care policies at LSP. One such policy requires diagnostic blood lab work which led to the discovery of the plaintiff's infection. Due to a failure to implement and enforce this policy, the plaintiff's infection was not discovered until his body and mind were already damaged.

Defendant Dr. Lavespere turned a blind eye to illnesses like the plaintiff's and used less expensive treatments or provided no treatment to regain his medical license. The less expensive treatment provided prolonged the plaintiff's syphilis infection which caused him further harm.

Defendant John Doe, an infectious disease doctor, was responsible for testing, assessment, and treatment of inmates diagnosed with infectious diseases. Defendant Doe failed to treat the plaintiff's syphilis infection that was readily identifiable through a blood test.

Defendant LeBlanc failed to implement and enforce treatment of syphilis and other serious infectious diseases. Due to the deliberate indifference of all defendants the plaintiff's

infection was not discovered earlier though he was incarcerated for 28 years. Treatment was not provided until requested by outside physicians 6 or 7 times. Due to the delay in diagnosis and treatment, the plaintiff suffers from degenerative heart disease, degenerative myopic disease requiring surgery, and loss of bladder control caused by the syphilis infection.

### Qualified Immunity

In response to the plaintiff's allegations, Defendants assert that they are entitled to qualified immunity in connection with Plaintiff's claims. The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 F. App'x. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.*

Undertaking the qualified immunity analysis, the Court finds that Defendants' motion should be granted. Plaintiff's allegations, accepted as true, fail to state a claim against any defendant.

## Personal Involvement and Deliberate Indifference

For a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that the defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

*Personal Liability*

The plaintiff alleges that he has been incarcerated for 28 years but he was not diagnosed with syphilis[1] until February of 2021. Though the plaintiff does not allege to have been suffering from any syphilis related signs or symptoms, he asserts that specific testing should have been performed earlier so that treatment could have been given at an earlier stage of the infection. Without having any signs, symptoms, or risk factors (sexually active with other men, living with

---

[1] According to the Centers for Disease Control and Prevention, the first symptom of syphilis, a painless sore, appears within 10 to 90 days after acquisition of syphilis. This is the primary stage which lasts 3 to 6 weeks. The sore will heal without treatment, but the infection then progresses to the secondary stage. At this stage, skin rashes and/or sores appear. The infected person may also experience fever, swollen lymph nodes, sore throat, patchy hair loss, headaches, weight loss, muscle aches, or fatigue. This is why some refer to syphilis as "The Great Pretender" because its symptoms can look like many other diseases. The symptoms of secondary syphilis will go away with or without treatment, but without treatment the infection will progress to the latent and possibly tertiary state of the disease.

In the latent (hidden) stage there are no visible symptoms of syphilis. Latent syphilis can last for years. Tertiary syphilis can appear 10 to 30 years after a person is infected, can affect multiple organ systems with symptoms vary depending on the organ affected. Neurosyphilis (nervous system), ocular syphilis (visual system), and otosyphilis (auditory and/or vestibular system) can occur at any stage of infection.

Syphilis can be diagnosed using treponemal tests, which include TP-PA, various EIAs, chemiluminescence immunoassays, immunoblots, and rapid treponemal assays that detect antibodies specific for syphilis. If a treponemal test is positive, the diagnosis can be confirmed with a nontreponemal test with titer. Treatments include benzathine penicillin, aqueous crystalline penicillin, doxycycline, tetracycline, and potentially ceftriaxone.

Syphilis – CDC Detailed Fact Sheet,  https://www.cdc.gov/std/syphilis/stdfact-syphilis-detailed.htm (accessed 10/24/23)

HIV and sexually active, or taking PrEP for HIV prevention) of syphilis it cannot be said that defendants LeBlanc, Johnson or Lavespere had knowledge of the plaintiff's risk of infection and personally denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints.

The plaintiff alleges that under the care and administration of defendant Dr. Lavespere there was a conscious disregard for serious medical conditions that required costly treatment. As explained above, the plaintiff had no signs or symptoms of syphilis that were ignored by Dr. Lavespere. Additionally, the plaintiff alleges he was given penicillin G, which is the preferred treatment for syphilis.[2]

*Supervisory Liability*

With regards to the plaintiff's allegations of a lack of a policy, as noted by the Court in *Crittindon,* supervisory officials may be liable under § 1983 for their failure to adopt policies if that failure causally results in a constitutional injury. *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022). Liability only arises when the officials act, or fail to act, with "deliberate indifference," a "disregard [for] a known or obvious consequence of [their] action[s]." Plaintiffs must introduce evidence that each Defendant had "actual or constructive notice" that their failure to adopt policies would result in constitutional violations. This typically requires showing notice of "[a] pattern of similar constitutional violations" due to deficient policies, permitting the inference that Defendants deliberately chose policies causing violations of constitutional rights. *Id.*

In the instant matter the plaintiff has not alleged a pattern of similar constitutional violations due to deficient policies. The plaintiff has not identified any other instances of delayed

---

[2] Sexually Transmitted Infections Treatment Guidelines, 2021 – Syphilis, https://www.cdc.gov/std/treatment-guidelines/syphilis.htm (accessed 10/24/23).

diagnosis and treatment of syphilis, or any other sexually transmitted infection, caused by the lack of a policy. As such, the plaintiff fails to assert a viable failure to adopt policies claim.

*Delayed Treatment*

Turning to the alleged delay in treatment after diagnosis, plaintiff alleges that defendant Dr. John Doe failed to treat the plaintiff for syphilis until June 10, 2021, after treatment was requested 6 or 7 times by an outside physician. A delay in treatment may violate the Eighth Amendment if the delay was the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. The plaintiff has not alleged any facts indicating that defendant Dr. Doe had knowledge of the plaintiff's diagnosis and personally denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. Plaintiff has not alleged any facts supporting a conclusion that Dr. Doe deliberately failed to treat him for a period of approximately 4 months.

Even if the plaintiff could state a claim against defendant Dr. Doe, his claim has prescribed. The purpose of Federal Rule of Civil Procedure 15(c) is to allow an amendment changing the name of a party to relate back to the original complaint *only if* the change is the result of an error. In the instant matter, the plaintiff has not made an error in identifying the correct defendant; rather, the problem is not being able to identify the defendant at all. Under these circumstances, a later amendment to substitute a named party for a Doe defendant may *not* relate back to the filing of the original complaint under Rule 15(c)(3) in order to prevent prescription. *See Jacobsen v. Osborne,* 133 F.3d 315, 320-21 (5th Cir. 1998). As such, the

plaintiff's claims against the Doe defendant are time-barred making any request for amendment futile.[3]

**Motion to Amend**

It is within the Court's discretion to deny a motion to amend if it is futile. An amendment would be futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Production Co.,* 234 F.3d 863, 872-873 (5th Cir. 2000). The Court finds such futility in this case.

In his Motion to Amend (R. Doc. 53) the plaintiff seeks to amend his Complaint solely to make clear that he is suing defendant LeBlanc in his individual and official capacities. The Court has already considered the plaintiff's claims against LeBlanc in both capacities as set forth above. Plaintiff's reply (R. Doc. 58) to the defendants' opposition to his Motion to Amend suggest that the plaintiff intends to add additional allegations. For example, the plaintiff suggests that the defendants were deliberately indifferent by failing to screen him upon intake for syphilis despite knowledge that he was convicted of a sex offense. Plaintiff further asserts that that the need for care was either known or should have been obvious to the defendants.

First, plaintiff has not alleged that any named defendant was involved with medical intake screening at LSP 30 years ago when the plaintiff was first transferred to the facility. Furthermore, the plaintiff has alleged only that he was convicted of a sex offense. He does not allege that upon intake, or at any time thereafter, he was exhibiting signs or symptoms of syphilis or that the sex offense committed by him put him at risk for syphilis. As such, his allegation that

---

[3] Inasmuch as there is no federal statute of limitations for claims brought pursuant to 42 U.S.C. § 1983, a federal court must borrow the forum state's general personal injury limitations period for such claims. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). In Louisiana, the applicable period of limitations is one year. La. Civ. Code Art. 3492. In the instant matter, the plaintiff complains of events which he alleges occurred as early as 2021. As such, the one-year period of limitations has run as to defendant Dr. John Doe, and the plaintiff's claims would not relate back to the filing of the original complaint as explained above.

his condition was obvious or should have been known is entirely without factual support. If the plaintiff had been exhibiting symptoms of syphilis, and any defendant made the specific decision to deny him care, then the plaintiff would state a claim for deliberate indifference. His proposed amendment does not set forth the required underlying factual support for such a claim and is therefore futile. *See Ortiz v. Geo Group, Inc.*, 2008 WL 219564 (W.D. Tex. Jan. 25, 2008) (Plaintiff stated a claim for deliberate indifference where the inmate was shaking uncontrollably upon intake and defendants chose not to provide even a cursory examination, and inmate later fell while experiencing alcohols withdrawal syndrome and died from injuries to his brain.) As such, plaintiff's Motions (R. Docs. 53 and 58) should be denied.

## RECOMMENDATION

It is the recommendation of the Magistrate Judge that the plaintiff's Motions (R. Docs. 53 and 58) be denied. It is further recommended that Defendants' Motion to Dismiss (R. Doc. 46) be granted, dismissing the plaintiff's claims with prejudice as to all defendants.[4]

Signed in Baton Rouge, Louisiana, on December 14, 2023.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The plaintiff's claims against defendant John Doe have prescribed for the reasons set forth herein. As such, the Court may grant the Motion to Dismiss with respect to this non-moving defendant *sua sponte* after giving Plaintiff notice and a reasonable time to respond. The objection period which follows this Report and Recommendation, as set forth in 28 U.S.C. § 636(b)(1) and Federal of Civil Procedure 72(b), satisfies the notice requirement. *See Treadway v. Wilkinson,* 2008 WL 4224817, n.3, (W.D. La. June 10, 2008). Defendant Doe has not been identified or served; however, for the foregoing reason the Court recommends dismissal of the plaintiff's claims asserted against defendant Doe.